IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHEQUANA K. CARTER,

    Plaintiff,

v.                                                     Civil Action No.: 3:20cv855

CONDUENT STATE HEALTHCARE, LLC,

    Defendant.

**JURY TRIAL DEMANDED**

## COMPLAINT

The plaintiff Shequana K. Conner ("Ms. Conner"), by counsel, submits this Complaint against the defendant Conduent State Healthcare, LLC ("Conduent"), for wrongful termination on account of her disability, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.

## PARTIES

1. Ms. Conner is an individual residing in Henrico County, Virginia.

2. Conduent is a wholly owned subsidiary of Conduent, LLC, which describes itself as a provider of diversified business process outsourcing and managed print solutions to commercial and government clients. Conduent's headquarters are located at 100 Campus Drive, Suite 200, Florham Park, New Jersey 07932. Conduct employed Ms. Conner at its Chesterfield County offices located at 7545 Midlothian Turnpike, Midlothian, Virginia 23225.

3. Conduent is an "employer" within the meaning of 42 U.S.C. § 12111(5).

## JURISDICTION and VENUE

4. This Court has subject matter jurisdiction over Ms. Conner's claims based on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(3) (violation of civil rights).

Venue is proper in this District as it is the location of the parties and the situs of the events complained of herein

## PROCEDURAL STATUS

5. Ms. Conner filed a timely administrative Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about April 10, 2017.

6. The EEOC issued Ms. Conner a Dismissal and Notice of Rights dated August 5, 2020 allowing her 90 days from the date of receipt to commence suit in court. Ms. Conner did not receive the aforementioned Notice until approximately two weeks prior to this filing.

7. Nonetheless, allowing three (3) additional days for receipt of the EEOC Notice through the U. S. Postal Service mail, this action is timely filed within 90 days of August 5, 2020 and all procedural prerequisites to suit have been met.

## ALLEGATIONS

8. Ms. Conner commenced work for a predecessor of Conduent on January 13, 2013. She working as a Quality Assurance Specialist. Conduent purchased the predecessor company on January 1, 2017. At the time of the incidents complained of herein, Ms. Conner was earning approximately $17.00 per hour.

9. Ms. Conner received positive performance evaluations and was performing her job duties in a satisfactory manner.

10. On October 23, 2016, Ms. Conner took a medical leave of absence pursuant to the Family and Medical Leave Act to deliver a child. Conduct approved her leave through December 28, 2016.

11. Following delivery on October 23, 2016, however, Ms. Conner was diagnosed by her physician, Megan Cassidy MD, with severe post-partum depression and anxiety. In addition, Ms.

2

Conner's newborn daughter had a congenital heart defect that required surgery in January 2017, exacerbating Ms. Conner's severe depression.

12. Severe depression is a mental impairment that "substantially limits one or more major life activities," including in Ms. Conner's case, caring for herself, performing manual tasks, eating, sleeping, learning, concentrating, thinking, communicating and working. As such, Ms. Conner suffered from a "disability" as defined by the ADA, 42 U.S.C. § 12102(1)(A), at the time of her termination.

13. Ms. Conner applied for short-term disability through Conduent's disability insurance carrier, Metropolitan Life Insurance Company ("MetLife").

14. On December 9, 2016, Dr. Cassidy submitted to MetLife an Initial Functional Assessment Form ("Assessment Form") documenting the diagnosis of depression. Specifically, Dr. Cassidy noted Ms. Conner's feeling "overwhelmed, depressed, continual crying, inability to sleep & inability to eat." Regarding job functioning abilities, Dr. Cassidy also checked a box noting that Ms. Conner had "extreme inability to function in most areas due to continuous impairment."

15. On December 12, 2016, MetLife approved short-term disability benefits through January 6, 2017.

16. Upon information and belief, MetLife kept Conduent apprized of Ms. Conner's medical leave and short-term disability status.

17. Ms. Conner's depression persisted, and she was unable to return to work on January 6, 2017 as anticipated. She was scheduled to see Dr. Cassidy during the week prior to January 6, 2017, but Dr. Cassidy had to reschedule the appointment for January 13, 2017.

18. On January 10, 2017, Ms. Conner called a human resources representative at Conduent to explain that her continued depression prevented her from returning on January 6, 2017. Ms. Conner was informed that Conduent had terminated her employment as of January 6, 2017.

19. Ms. Conner was so upset at being fired while on medical leave for severe depression, that she set an appointment with her psychologist, Lisa Cuseo-Ott, Ph.D that same day. Dr. Cuseo-Ott called Conduent's human resources department to confirm the termination and explain that Ms. Conner's severe depression precluded her from returning to work at that time. The Conduent representative confirmed that Ms. Conner had indeed been fired.

20. On January 13, 2017, Dr. Cassidy submitted to MetLife a second Assessment Form requesting an extension of her disability leave through January 31, 2017.

21. On January 27, 2017, MetLife approved an extension of short-term disability leave through January 31, 2017.

22. On or about January 12, 2017, Ms. Conner received an undated letter from her supervisor at Conduent, Tammy Grant, which was sent Certified Mail and bearing a post mark of January 12, 2017. Ms. Conner did not receive this letter until January 21, 2017, which date is noted on the envelope by the postal carrier.

23. The letter noted that Ms. Conner did not return to work on January 6, 2017 and that her failure to return to work violated the company's attendance policy. The letter concluded: "If I do not hear from you by January 16, 2017 I will consider that you are no longer interested in working with Conduent and have voluntarily resigned your position."

24. By January 16, 2017, MetLife had already granted an extension of Ms. Conner's disability leave, and Conduent had direct knowledge of Ms. Conner's disability and continued medical leave. Further, Conduent had already terminated Ms. Conner's employment.

25. Upon information and belief, Conduent terminated Ms. Conner's employment on account of her disability of severe post-partum depression.

26. Ms. Conner is aware of non-disabled Conduent employees who took medical leaves of absence that extended beyond the 12 weeks protected under the FMLA who were not terminated from employment. Ms. Conner was subjected to disparate treatment compared to similarly-situated non-disabled employees

27. In terminating Ms. Conner's employment, Conduent violated her rights to be free from discrimination because of her disability.

28. Ms. Conner was out of work for approximately two years despite diligently searching for alternative employment following her dismissal. Upon information and belief, she was unable to secure alternative employment because of the fact that she was terminated from Conduent.

29. Ms. Conner suffered lost back and front wages and benefits as a direct result of Conduent's illegal conduct. Ms. Conner also suffered non-economic injuries including emotional harm, damage to her career and work record, and inconvenience.

## COUNT I
## DISABILITY DISCRIMINATION UNDER THE ADA

30. By discharging Ms. Conner, as described herein, because of her mental impairment, Conduent violated her rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

31. Conduent's conduct in discriminating against Ms. Conner evinced a willful and conscious disregard for Ms. Conner's rights, and reflected malice, spite and ill-will.

32. As a direct and proximate result of Conduent's discriminatory actions, including wrongful termination from employment, Ms. Conner has suffered mental and emotional distress, embarrassment, humiliation, inconvenience, litigation expenses, including attorney's fees.

33. Ms. Conner's injuries under this Count entitle her to reinstatement to her former position, and an award for (a) loss of past and future earnings, including fringe benefits; (b) compensation for her humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) compensation for damage to her career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

WHEREFORE, the plaintiff Shequana K. Conner demands judgment against the defendant Conduent State Healthcare, LLC, reinstating her to her former position, and awarding her the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), in compensatory and punitive damages; plus attorney's fees, costs of suit, and such other and further relief as this Court may deem just and proper.

Respectfully submitted,

SHEQUANA K. CONNER

By: _____/s/_____
Scott Gregory Crowley
Virginia Bar No. 31216
Attorney for Shequana K. Conner
Crowley & Crowley, P.C.
4870 Sadler Road, Suite 300
Glen Allen, VA  23060
Tel.:  (804) 205-5010
Fax: (804) 205-5001
Email: scrowley@crowleyandcrowley.com